[No. B083055. Second Dist., Div. Seven. June 17, 1994.]

CHARLOTTE L. BROWN et al., Plaintiffs and Appellants, v.
WEST COVINA TOYOTA et al., Defendants and Respondents.

Counsel

Taylor & Hodges and Berta Peterson-Smith for Plaintiffs and Appellants.

Thomas A. Ramsey for Defendants and Respondents.

Opinion

LILLIE, P. J.—Plaintiffs (hereinafter referred to collectively as Brown) appeal from an order of the municipal court[1] denying their motion to strike $31,300 in attorney fees and $1,346 in costs claimed by defendant West Covina Toyota (hereinafter Toyota) in a memorandum of costs filed after a judgment on directed verdict in defendant's favor. The issue on this appeal is whether the municipal court properly permitted Toyota to recover costs and attorney fees under Civil Code section 2983.4, part of the Rees-Levering Motor Vehicle Sales and Financing Act (Civ. Code, § 2981 et seq.).

FACTUAL AND PROCEDURAL BACKGROUND

According to the allegations of the complaint, Brown purchased a 1989 Toyota Tercel from Toyota in May 1990 for $11,970.88 pursuant to a written contract; the car had on it 23,917 miles; Toyota also "appended to the [vehicle] a service contract which defendants told plaintiff, and plaintiff reasonably believed, was an express written warranty in which [Toyota] warranted to perform any repairs or replacement of parts necessary to ensure that the [vehicle] and the components therein were free from all defects in material and workmanship"; in November 1990, at 30,621 miles, Brown discovered that the vehicle failed to conform to the warranties "in that defects, nonconformities, misadjustments or malfunctions relating to the front end were exhibited." Brown also discovered that the vehicle had been

---

[1]Brown filed a timely notice of appeal from the municipal court's order denying the motion to strike memorandum of costs. The appellate department of the superior court, in a two-to-one "memorandum judgment" of March 4, 1994, affirmed the trial court's order denying Brown's motion. On April 5, 1994, the appellate department of the superior court filed an order granting certification to the Court of Appeal. On April 12, 1994, we ordered the case transferred to us for hearing and decision. General standards of appellate review apply to appeals from municipal courts transferred for decision to the Courts of Appeal. (*Lane & Pyron, Inc.* v. *Gibbs* (1968) 266 Cal.App.2d 61, 65 [71 Cal.Rptr. 817].)

We also note that although the memorandum of costs was apparently filed on behalf of West Covina Toyota and defendant Toyota Motor Credit Corporation, and plaintiffs' motion to strike costs was directed at both defendants, only West Covina Toyota opposed the motion and filed a brief on appeal. Inasmuch as both defendants were represented by the same counsel, and appellants treat both defendants as respondents on appeal, we deem this decision to apply to both defendants.

involved in an accident prior to its sale to her, contrary to Toyota's representation that it had never been involved in an accident.

Brown notified Toyota and attempted to invoke the applicable warranties, but Toyota failed to make the vehicle conform to the warranties; Brown notified defendant of her revocation of acceptance of the vehicle and demanded return of the consideration paid or replacement of the vehicle with a similar vehicle free of defects.

In a first cause of action for rescission of contract, Brown sought a judicial declaration of rescission plus incidental damages and attorney fees, based on the allegation that "the failure of consideration herein alleged justifies the rescission of said contract and a revocation of acceptance of the [vehicle]." The first cause of action also alleged that "the contract is either a 'conditional sales contract' subject to the provisions of the Rees-Levering Motor Vehicle Sales and Finance Act . . . or a 'lease contract' subject to the provisions of the Vehicle Leasing Act, Civil Code section 2985.7 et seq."

The second cause of action, captioned breach of express warranty under the Song-Beverly Consumer Warranty Act (Song-Beverly), alleges that defendant failed to perform the proper repairs, parts replacements, and/or adjustments to make the vehicle conform to the express warranties provided in conjunction with the acquisition of the vehicle, in breach of Toyota's obligations under Song-Beverly. A third cause of action, based on similar allegations, is labeled breach of implied warranty of merchantability under Song-Beverly; a fourth cause of action is captioned "violation of statute under Song-Beverly."

A fifth cause of action, captioned "Violation of Consumers Legal Remedies Act," alleges that Toyota violated certain provisions of Civil Code section 1770, dealing with misrepresentations concerning the characteristics or qualities of goods. A sixth cause of action for "fraud—intentional misrepresentation" alleges that defendant made misrepresentations about the vehicle to induce her to purchase it.

Toyota answered the complaint and filed a cross-complaint for indemnity and declaratory relief against the Hertz Corporation; therein Toyota alleged that when it purchased plaintiffs' vehicle from Hertz, Hertz represented that the vehicle was free of defects, and if plaintiffs sustained damages, such damages were caused entirely by Hertz.

According to a minute order of January 4, 1993, at an in-chambers conference, Toyota moved for a directed verdict, which was granted. On January 14, 1993, Toyota filed a memorandum of costs seeking attorney fees of $31,300 and other costs which together totaled $32,646. In a declaration accompanying the cost memorandum, Toyota claimed that on January 4, 1993, it made a motion for judgment on the pleadings, which was granted; the transaction giving rise to this lawsuit was the sale of a used vehicle by a contract which is subject to the provisions of the Rees-Levering Motor Vehicle Sales and Finance Act (Rees-Levering); pursuant to a provision of Rees-Levering, Civil Code section 2983.4, Toyota is a prevailing party entitled to reasonable attorney fees and costs.[2]

On March 2, 1993, a judgment was entered in Toyota's favor for $32,646. On March 1, 1993, plaintiffs filed a motion to strike Toyota's memorandum of costs on the ground that the gravamen of plaintiffs' action sounded in violations of Song-Beverly and fraudulent misrepresentation; as a practical matter, this case would not have been prosecuted absent Song-Beverly, even though the purchase of the vehicle was accompanied by a conditional sale contract within the meaning of Rees-Levering; under Song-Beverly, Civil Code section 1794, subdivision (d), the Legislature specifically excluded the seller from recovery of costs and attorney fees.[3]

After Toyota filed opposition to plaintiffs' motion, the court took the matter under submission. By minute order of April 2, 1993, the court denied plaintiffs' motion.

Plaintiffs filed timely notice of appeal from the order denying their motion to strike costs. Inasmuch as respondent's brief argues that the order denying the motion to strike costs can be upheld on the ground that appellants' motion was untimely, we address this issue before discussing the merits.

---

[2]Civil Code section 2983.4 provides: "Reasonable attorney fees and costs shall be awarded to the prevailing party in any action on a contract or purchase order subject to the provisions of this chapter regardless of whether the action is instituted by the seller, holder or buyer. Where the defendant alleges in his answer that he tendered to the plaintiff the full amount to which he was entitled, and thereupon deposits in court, for the plaintiff, the amount so tendered, and the allegation is found to be true, then the defendant is deemed to be a prevailing party within the meaning of this section."

[3]Civil Code section 1794, subdivision (d), provides: "If the buyer prevails in an action under this section, the buyer shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action."

## I

### TIMELINESS OF MOTION TO STRIKE

In this case, Toyota's memorandum of costs was filed *before* judgment was entered on March 2, 1993, and was thus premature within the provisions of California Rules of Court, rule 870(a)(1), requiring that a memorandum of costs shall be served and filed "within 15 days after . . . the date of service of written notice of entry of judgment or dismissal." Under similar circumstances, the court in *Laurel Hills Homeowners Assn.* v. *City Council* (1978) 83 Cal.App.3d 515 [147 Cal.Rptr. 842] stated that a party's "cost bill, though not a nullity [citation], was filed prematurely. If it had been filed within the period that it should have been filed, petitioners' motion to tax costs would have been timely. We will therefore treat petitioners' motion as if it had been timely filed." (83 Cal.App.3d at p. 528.)

Accordingly, we deem the premature memorandum of costs to have been served and filed on March 3, 1993, the day after notice of entry of judgment was served, and the earliest date for service and filing of a cost bill within California Rules of Court, rule 870(a)(1). Thus, the motion to strike, filed on March 1, 1993, was also technically premature; however, under the same rule applicable to the cost bill, the motion was timely according to the provisions of rule 870(b), requiring such motion to be served and filed "15 days after service of the cost memorandum."

## II

### ATTORNEY FEES AND COSTS UNDER CIVIL CODE SECTION 2983.4

Respondent acknowledges that it is not entitled to costs and attorney fees under Song-Beverly; the only basis for its claim is the cost and fee provision of Rees-Levering set out in Civil Code section 2983.4. Because this appeal involves two statutes that appear to conflict in the circumstances of this case, we set out some background on Song-Beverly.

### A. *Attorney Fees and Costs Under Song-Beverly.*

In this case, it is undisputed that appellants were unsuccessful in asserting a claim under Song-Beverly, primarily because the complaint forthrightly admits that the vehicle purchased from respondent was used, and the trial court impliedly determined that the service contract accompanying the sale

did not contain an applicable express warranty within the provisions of Civil Code section 1795.5.[4]

In light of well-established principles of statutory construction, Song-Beverly (Civ. Code, § 1794, subd. (d)) is clear and unambiguous in awarding costs and attorney fees only to the *prevailing buyer (ante,* fn. 3); had the Legislature intended to allow costs and fees for either prevailing party, it would have so stated.

Other statutes expressly permitting fees for only a particular prevailing party have been interpreted as denying fees for the other party, even if it prevailed. For example, in *Covenant Mutual Ins. Co.* v. *Young* (1986) 179 Cal.App.3d 318 [225 Cal.Rptr. 861], involving the one-sided fee-shifting provisions of Civil Code section 3318 for breach of warranty of an agent's authority, the court explained: "The fact lawmakers offer a bounty for plaintiffs who sue to *enforce* a right the Legislature has chosen to favor in no sense implies it intends to offer this same bounty to defendants who show they have not violated the right. Indeed the more logical explanation is that the Legislature desires to encourage injured parties to seek redress—and thus simultaneously enforce public policy—in situations where they otherwise would not find it economical to sue." (179 Cal.App.3d at p. 325, italics in original.)

Song-Beverly "is manifestly a remedial measure, intended for the protection of the consumer; it should be given a construction calculated to bring its benefits into action." (*Kwan* v. *Mercedes-Benz of North America, Inc.* (1994) 23 Cal.App.4th 174, 184 [28 Cal.Rptr.2d 371].) "The Act regulates warranty terms, imposes service and repair obligations on manufacturers, distributors, and retailers who make express warranties, requires disclosure of specified information in express warranties, and broadens a buyer's remedies to include costs, attorney fees, and civil penalties." (*Krieger* v. *Nick Alexander Imports, Inc.* (1991) 234 Cal.App.3d 205, 213 [285 Cal.Rptr. 717].)

In *Hanson* v. *Signer Motors, Inc.* (1990) 105 Ore.App. 74 [803 P.2d 1207], a prevailing manufacturer sued by consumers under the federal Magnuson-Moss Warranty Act contended that it was entitled to recover attorney fees

---

[4]Section 1795.5 provides in pertinent part: "Notwithstanding the provisions of subdivision (a) of Section 1791 defining consumer goods to mean 'new' goods, the obligation of a distributor or retail seller of used consumer goods in a sale in which an express warranty is given shall be the same as that imposed on manufacturers under this chapter except: [¶] (a) It shall be the obligation of the distributor or retail seller making express warranties with respect to used consumer goods . . . to maintain sufficient service and repair facilities within this state to carry out the terms of such express warranties. . . ."

Plaintiffs apparently did not appeal from the judgment rendered on the pleadings, which judgment is final. In addressing the issues on this appeal, we need not, and do not, express any opinion as to the correctness of this judgment.

under the "combined effect of 15 USC §°2310(d)(2)" and an Oregon statute similar to California's Civil Code section 1717. The court held the manufacturer was not entitled to attorney fees: "First, [the Oregon statute] does not apply unless there is a specific contractual right to attorney fees. . . . Second, the federal law protects *consumers* and is intended to encourage consumer actions for breach of warranty by awarding attorney fees if the *consumer* prevails. Manufacturers, retailers and suppliers are not consumers and cannot receive attorney fees under the act. [Citations.] Third, [the Oregon statute] cannot be applied to defeat the consumer protection purpose and underlying policies of a federal statute." (803 P.2d at p. 1211, fn. omitted, original italics.)

As noted by a court in another context, ". . . one-sided statutory and judicially mandated fee-shifting provisions serve a specific public policy which would be vitiated by the grant of reciprocity." (*Alcott* v. *M. E. V. Corp.* (1987) 193 Cal.App.3d 797, 800 [238 Cal.Rptr. 520].)

Respondent does not deny that appellants grounded at least one of their causes of action on Song-Beverly. Under Song-Beverly, a prevailing seller is not entitled to any fees or costs against a losing consumer. Neither in its briefs on appeal nor in the trial court did respondent argue for an apportionment of fees attributable to those claims based on Song-Beverly. Rather, respondent contends that because the complaint alleges that the sale contract in this case is one subject to the provisions of Rees-Levering, and because it prevailed in the action, respondent is entitled to all of its attorney fees and costs under the provisions of Civil Code section 2983.4, awarding reasonable attorney fees and costs to the prevailing party "in any action on a contract or purchase order subject to the provisions of this chapter." (*Ante*, fn. 2.)

The issue before us is whether the instant action constitutes an "action on a contract or purchase order subject to [Rees-Levering]." This statutory language reasonably can be construed to require that the lawsuit involve a cause of action or claim under Rees-Levering.

■ " 'The nature of an action and the issues involved are to be determined, not from the appellation given the pleading, but from the facts alleged and the relief that they support.' " (*Estate of Linnick* (1985) 171 Cal.App.3d 752, 759 [217 Cal.Rptr. 552].) A cause of action consists of a primary right possessed by the plaintiff, a corresponding primary duty devolving on the defendant, and a delict or wrong done by the defendant. (*Jenkins* v. *Pope* (1990) 217 Cal.App.3d 1292, 1299, fn. 2 [266 Cal.Rptr. 557].)

## B. *Rees-Levering*

"The Rees-Levering Act was the result of an extensive study of the entire scope of motor vehicle sales and financing. [Citations.] It was intended 'to protect the inexperienced and unwary retail *installment plan* purchaser and yet leave the greatest freedom of contract available to the experienced businessman.' " (*Shapiro* v. *Ogle* (1972) 28 Cal.App.3d 261, 266 [104 Cal.Rptr. 553], original italics.)

Soon after Rees-Levering became effective on January 1, 1962, "the California Supreme Court declared: ' ". . . 'The obvious purpose of the statute is to protect purchasers of motor vehicles against excessive charges by requiring full disclosure of all items of cost' [citation]; the form and requisites prescribed by the statute are mandatory; a contract which does not *substantially* conform thereto is unenforceable; and a buyer who has made payments to the seller under such a contract may recover them . . . ." ' [Citation.] [¶] The act contains the following provisions, inter alia, all clearly designed to protect the purchaser of a motor vehicle from the economic hazards which the Assembly Interim Committee on Finance and Insurance and the courts had found prevalent under the old act. [Citations.] The act provides that every conditional sales contract shall disclose to the buyer all details concerning the sale, financing, and complete costs of the purchase of the motor vehicle. Eighteen separate items are specified for disclosure. The act requires that all of the terms and agreements must be contained in a single document, and sets a maximum interest rate chargeable for the financing of the automobile. [Citation.] The act requires at least 15 days' written notice of intent to dispose of a repossessed vehicle and allows recovery of a deficiency judgment by the lender only if all notice requirements are complied with. . . . It limits the security which may be taken by the lender to the motor vehicle being purchased. A lien on any other real or personal property is unenforceable." (*Hernandez* v. *Atlantic Finance Co.* (1980) 105 Cal.App.3d 65, 69-70 [164 Cal.Rptr. 279], italics in original.)

■ Assuming for purposes of this appeal that the instant sale contract is subject to the provisions of Rees-Levering, the causes of action in this case do not allege the violation of any duty under Rees-Levering, nor do they seek vindication of any rights thereunder. In fact, our record unambiguously reveals that the gravamen of the action, or primary right which appellants sought to enforce, involved the alleged breach of warranty that the automobile they purchased was free from all defects and nonconformities relating to the front end. Nowhere in the complaint, or in any other part of this record, have appellants asserted a breach by respondent of any duty relating to the financing or repossession of the vehicle, or any other duty arising under Rees-Levering.

Although the complaint does allege that the contract is one within the provisions of Rees-Levering, that fact is essentially immaterial in the context of the remaining allegations of the complaint, which do not state a claim for relief under Rees-Levering. Moreover, notwithstanding the failure of the complaint to state a claim thereunder, nothing in our record suggests that any claim for violation of duties under Rees-Levering ever arose between the parties in any other forum.

In other situations, it has been recognized that although a contract may create a relationship between certain parties, the contract may not be the basis of an action arising out of that relationship. For example, in *Denning* v. *State* (1899) 123 Cal. 316 [55 P. 1000], a deckhand employed by the Board of State Harbor Commissioners fell on a ladder and sought to predicate liability of the state on the theory that the action was one for breach of duty under the contract of employment. The court held that "Here the contract of employment has nothing whatever to do with the liability except to create a duty on the part of the employer, a duty not expressed in the contract, and for the violation of which the contract of employment furnishes no rule or standard for the estimation of damages; nor is the action grounded upon the contract, but upon the duty springing from the relation created by it viz., that of employer and employee, and under the old system of pleading was always classed as an action *ex delicto*." (123 Cal. at p. 323.)

In *Automobile Ins. Co.* v. *Union Oil Co.* (1948) 85 Cal.App.2d 302 [193 P.2d 48], the plaintiffs' insured purchased from defendant a floor cleaning machine which caused a fire in the insured's factory, damaging personal and real property; in plaintiffs' subrogation action against defendant, defendant contended that the action was barred by a two-year statute of limitations because the insured's action against defendant would have been based on breach of an oral contract. The court held that ". . . in the case now engaging our attention, the contract as pleaded had nothing whatever to do with the liability other than to create a duty on the part of [defendant] herein, and the action is grounded not upon the contract, but upon the duty springing from the relation created by it. While appellants might have elected to sue either in tort or in contract, it clearly appears to us that the instant action is based upon the injury done to property. It, therefore, comes under the provisions of section 338 of the Code of Civil Procedure, which provides that the statutory period for commencing an action for injuring real property and goods and chattels is three years, and that, regardless of the theory upon which relief is sought, viz., whether on a negligence theory or a breach of warranty theory. In the case at bar the pleader was evidently following the commonly accepted practice of setting up the contract of warranty as a matter of inducement to show that a definite legal duty arose on the part of

the [defendant]. Where, as here, the breach of duty and consequent injury to one of the parties to such contract are set forth, it is the violation of its duty by [defendant] that is the *gravamen* of the action, which accordingly sounds in tort and is not '*ex contractu*' . . . ." (85 Cal.App.2d at p. 307, original italics.)

In the case at bar, like *Automobile Ins. Co.*, it cannot be said that the gravamen of the action involves a violation of duty arising under Rees-Levering. Accordingly, the instant action "is grounded not upon the contract, but upon the duty springing from the relation created by it." (85 Cal.App.2d at p. 307.)

Respondent essentially interprets the "action on a contract" language of Civil Code section 2983.4 broadly to permit fees to a prevailing seller whenever there is an action in some way *involving* a conditional sale contract of an automobile, whether or not the action seeks to enforce a right under Rees-Levering. This construction of the statute would effectively nullify the one-sided fee-shifting under Song-Beverly whenever a plaintiff sues to enforce a breach of warranty claim under Song-Beverly, but happens to have purchased the automobile under a conditional sale contract. In other words, only purchasers who pay cash for their automobiles would be protected by the one-sided fee-shifting provisions of Song-Beverly when they do not prevail thereunder; on the other hand, those plaintiffs who purchase their automobiles under a conditional sale contract and who do not prevail on their Song-Beverly claims would be liable for the prevailing party's costs and attorney fees under Rees-Levering simply because they purchased their automobile with a conditional sale contract and even though they do not claim breach of any duty under Rees-Levering.

Respondent points to nothing in Song-Beverly or its legislative history indicating the Legislature intended the foregoing restriction on the provisions of Civil Code section 1794, subdivision (d), or that such a result was contemplated by its provisions. Likewise, respondent points to nothing in Rees-Levering indicating the Legislature intended to award fees to a prevailing party in all actions—even those involving personal injury or products liability—simply because those actions may have involved automobiles purchased under a conditional sale contract. In fact, respondent's construction of Civil Code section 2983.4 violates well-established principles of statutory construction that statutes should be interpreted so as to produce a result that is reasonable, and if two constructions are possible, that which leads to the more reasonable result should be adopted. (*Granberry* v. *Islay Investments* (1984) 161 Cal.App.3d 382, 388 [207 Cal.Rptr. 652].) Moreover, it is "a cardinal rule of statutory construction that statutes relating to

the same subject matter are to be read together and reconciled whenever possible to avoid nullification of one statute by another." (*Simonini* v. *Passalacqua* (1986) 180 Cal.App.3d 400, 404 [225 Cal.Rptr. 588]; see also *Walters* v. *Weed* (1988) 45 Cal.3d 1, 9 [246 Cal.Rptr. 5, 752 P.2d 443].)

Reading Civil Code section 2983.4 together with Civil Code section 1794, subdivision (d), as we must to avoid nullification of the latter by the former, we conclude that under the circumstances of this case, the language "in any action on a contract . . . subject to the provisions of this chapter" in section 2983.4 requires that respondent be a prevailing party on a cause of action under Rees-Levering. As appellants asserted no cause of action under Rees-Levering, respondent is not entitled to costs and attorney fees under section 2983.4.

Respondent's reliance on *Cobian* v. *Ordonez* (1980) 103 Cal.App.3d Supp. 22 [163 Cal.Rptr. 126] is misplaced. In *Cobian*, the court upheld an award of costs and attorney fees to a prevailing *buyer* of a used car who had sued the seller for rescission, restitution, and damages; on appeal, the court upheld summary adjudication for rescission and restitution on the first cause of action, "grounded . . . on a financing overcharge apparent from the contract itself," and which "exceeded those allowed by Civil Code section 2982, subdivision (c)." (103 Cal.App.3d at p. Supp. 28.) In concluding that plaintiff was properly awarded attorney fees under Civil Code section 2983.4, the court held that "Under section 2983.4 the action need only be *on a contract subject to the Rees-Levering Act,* not an action to *enforce* such a contract. In *Leaf* v. *Phil Rauch, Inc.* (1975) 47 Cal.App.3d 371 at pages 378-379 . . . , the court held attorney fees proper under section 2983.4 where plaintiff had sued to rescind a contract subject to the Rees-Levering Act." (103 Cal.App.3d at p. Supp. 31, original italics.)

*Leaf* and *Cobian* may be distinguishable from each other, but they are both distinguishable from the instant case because they do not present the same apparent conflict between the attorney fees provisions of Song-Beverly and Rees-Levering. Both *Leaf* and *Cobian* involve prevailing *buyers* who successfully sued for restitution and rescission of a conditional sale contract, a situation not presented here. Accordingly, having failed to support its claim for costs and fees with any applicable authority, we cannot conclude respondent was entitled to them. The trial court should have granted the motion to strike the cost bill.

## Disposition

The April 2, 1993, order denying plaintiffs' motion to strike defendants' memorandum of costs is reversed; on remand, the trial court is directed to

grant plaintiffs' motion to strike defendants' memorandum of costs. Appellants are entitled to their costs on appeal.

Johnson, J., and Woods (Fred), J., concurred.

A petition for a rehearing was denied July 11, 1994. Woods, J., was of the opinion that the petition should be granted.